UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| MARK E. BROWN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 09-4045 |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |

## ORDER

This Matter is now before the Court on Plaintiff's Motion for Summary Judgment and the Commissioner's Motion to Affirm.  For the reasons set forth below, Plaintiff's Motion for Summary Judgment  [#12] is DENIED, and the Commissioner's Motion for Summary Affirmance [#17] is GRANTED.

## BACKGROUND

Plaintiff, Mark E. Brown ("Brown"), was 49 years of age at the time of the administrative hearing (R483).  He is 6'3" and weighs 250-260 pounds. (R487)  He is single and lives at home with his elderly mother.  (R487)  He graduated from high school in a special education program and attended two different technical schools after graduation.  (R318)  Brown also has a history of competitive employment.  (R318)  He was a gas station attendant, he was involved with the "junking" of scrap metal, and he worked for several years loading newspapers for the Moline Dispatch, but has not held a job since he was laid off in 2004.  (R318; R490)

Brown filed applications for Disability Insurance Benefits ("DIB") and Supplementary Security Income ("SSI") on January 27, 2006 (R109-12, 461-72), alleging an initial disability onset date of March 31, 2004 (R109). His attorney amended the onset date at the hearing before the ALJ to April 2006 (R496). Brown's DIB application was denied on May 26, 2006 (R67-70). His SSI application was denied initially on February 21, 2006, and upon reconsideration on August 9, 2006 (R67-70, 474-75). He requested a hearing by an Administrative Law Judge ("ALJ"), which was received on August 29, 2006 (R66). A hearing was held on April 26, 2007, before Administrative Law Judge John Wood (R480-523). Appearing at the hearing were Mr. Brown, his attorney, and George Paprocki, a vocational expert (*Id.*). On November 29, 2007, the ALJ issued his decision denying Brown's claim for disability (R12-23).

Brown currently lives at home with his elderly mother (R487). He is independent in most activities of daily living, although his brother assists him with his financial management (R420). Brown worked for several years as a dockworker unloading trucks until he was fired for an on-the-job incident (R420). He cooks, eats five meals a day, performs household tasks including laundry and yard work, drives, fixes things, plays games and engages in hobbies (R420).

The record shows that since 2002, Brown has been tested and examined by several doctors, and several more experts have reviewed the record and given their opinion as to his conditions. He has shown no psychiatric problems, delusions or hallucinations, and is in good contact with reality. (R411) He has no history of alcohol or drug abuse. (R393) He was able to perform basic work functions and had a job at the Moline Dispatch newspaper for eleven years. (*Id.*) Brown has been diagnosed with depression and Type II diabetes (since 2006) and by 2007 he was taking several medications including Metformin, Amaryl, Zoloft and Lantus. (R428-39) His reading, writing and spelling scores were all low. (R421) His strengths include his visuospatial abilities (i.e. his ability to accurately measure distance, volume and space) and his

performance abilities. (R422) His memory scores ranged from average to severely impaired. (421) Several doctors also made mention of his inability to deal with criticism. (R358)

More specifically, Brown scored a verbal I.Q. of 66, performance I.Q. of 100, and an overall I.Q. of 79 in 2002. (R319) His reading and spelling scores place him at a first grade level. (R419) He is moderately limited in his ability to understand and remember detailed instructions and has problems maintaining concentration and attention for extended periods. (R320-321; 348; 370). According to several doctors, he can perform unskilled labor. (*Id.*) He had no noted physical limitations and was able to lift 50 pounds when he worked. (R392-94; 510) In later reviews he was noted as having reduced concentration, task completion, and memory. (R395-412) He does have the ability to understand, remember and carry out more detailed instructions with some concrete variable, make independent decisions, and maintain alertness and attention to details in a work setting which does not require reading and writing (*Id.*)

During the administrative hearing, Brown and a vocational expert ("VE") testified. The ALJ presented the VE with the following hypothetical:

> For the first hypothetical, assume no exertional – well, the past work the same as the claimant's and no exertional limitations. But the first hypothetical would be say someone can only have occasional interaction with public, coworkers and supervisors, would someone be able to do this, this job?

(R512). VE Paprocki testified that a person in this situation would be able to do the Brown's previous job loading and unloading trucks. (*Id.*) The ALJ added additional limitations to the hypothetical, such as occasional interaction with the public and the ability to perform only simple repetitive tasks, to determine whether that person would be able to perform his previous job. (*Id.*) It was not until the ALJ added the requirement that the hypothetical person avoid concentrated exposure to unprotected heights and hazardous machinery that the VE stated that the person would no longer be able to perform the job (R514). The ALJ then asked the VE whether, even with the limitation that the hypothetical person avoid hazardous machinery, there

were other jobs that the person could perform (*Id.*).  The VE concluded that the person could perform jobs such as dishwasher, kitchen helper and laundry worker (R514-15).  There are jobs that the person could perform even if the exertional level was reduced to light (R515).  These jobs include electronics worker, light packaging work or light attendant (*Id.*).

In his decision denying Brown disability benefits, the ALJ concluded that he meets the insured status requirements of the Social Security Act through September 30, 2009 (R17).  The ALJ also determined that Brown has a learning disability, depression, borderline mental functioning and diabetes, the combination of which is severe. (R17) However, the ALJ concluded that he did not meet the criteria of 12.05(C)[1], having determined that Brown's low I.Q. scores were a function of his learning disorder and that he had a performance I.Q. of 100. Additionally, he has been employed for several years and engages in a variety of activities of daily living (R18).  Also, the ALJ found that Brown has the residual functional capacity ("RFC") to perform work activity, except he needs to avoid concentrated exposure to hazards and all environmental factors. Further, the ALJ found that Brown is limited to the performance of simple and repetitive tasks with occasional interaction with the public, coworkers, and supervisors and the flexibility to meet the competitive production standards of an employer on a per shift rather

---

[1] **12.05 *Mental retardation*:** Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
A. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;
or
B. A valid verbal, performance, or full scale IQ of 59 or less;
or
C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;
or
D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration.
20 C.F.R. Pt. 404, Subpart P, App. 1 §12.05.

than per hour basis (R18). The ALJ determined that, based on Brown's RFC he is unable to perform any past relevant work (R22). The ALJ concluded that he could handle a checkbook and his social security disability benefits, even though in 2002 Dr. Dhahens concluded otherwise. (R319) Finally, the ALJ concluded that considering Brown's age, education, work experience and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform (*Id.*). As a result, the ALJ found Brown not to be disabled for the purposes of his application for DIB and SSI (*Id.*).

Brown submitted a Request for Review of Hearing Decision. (R7) On June 2, 2009, the Appeals Council declined review of his claim, and the ALJ's decision became the final decision of the Commissioner. (R7-9) This appeal followed. The Court has jurisdiction over this action pursuant to 42 U.S.C. §405(g).

## DISCUSSION

In order to be entitled to DIB or SSI, a plaintiff must show that his or her inability to work is medical in nature and that he or she is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of employers are irrelevant in determining whether a plaintiff is eligible for disability benefits. *See* C.F.R. §§ 404.1566, 416.966 (1986).

The establishment of disability under the Act is a two-step process. First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382(c)(a)(3)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. McNeil v. Califano, 614 F.2d 142, 143 (7th Cir. 1980). That factual determination is made by using a five-step test. *See* 20 C.F.R. §§ 404.1520, 416.920.

The five-step test is examined by the ALJ, in order, as follows: (1) is the plaintiff presently unemployed; (2) is the plaintiff's impairment "severe" (20 C.F.R. §§ 404.1521, 416.921); (3) does the impairment meet or exceed one of the list of specified impairments (20 C.F.R. Part 404, Subpart P, Appendix 1); (4) is the plaintiff unable to perform his or her former occupation; and (5) is the plaintiff unable to perform any other work within the national economy?

An affirmative answer at any step leads either to the next step of the test, or at steps 3 and 5, to a finding that the plaintiff is disabled. A negative answer at any point, other than at step 3, stops the inquiry and leads to a determination that the plaintiff is not disabled. Garfield v. Schweiker, 732 F.2d 605 (7th Cir. 1984).

The plaintiff has the burdens of production and persuasion on steps 1 through 4. However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some other types of substantial gainful employment. Tom v. Heckler, 779 F.2d 1250 (7th Cir. 1985); Halvorsen v. Heckler, 743 F.2d 1221 (7th Cir. 1984).

The Court's function on review is not to try the cases *de novo* or to supplant the ALJ's findings with the Court's own assessment of the evidence. Pugh v. Bowen, 870 F.2d 1271 (7th Cir. 1989). The Court must only determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. Delgado v. Bowen, 782 F.2d 79, 82 (7th Cir. 1986). In determining whether the ALJ's findings are supported by substantial evidence, the Court must consider whether the record, as a whole, contains "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971). Credibility determinations made by the ALJ will not be disturbed unless the finding is clearly erroneous. Anderson v. Bessemer City, 470 U.S. 564, 573, 105 S.Ct. 1504 (1985); Imani v. Heckler, 797 F.2d 508 (7th Cir.), *cert. denied*, 479 U.S. 988, 107 S.Ct. 580 (1986).

Brown brings several issues on appeal of the ALJ's ruling that he is not disabled according to sections 216(i), 223(d) and 1614(a)(3)(A) of the Social Security Act. Brown's first contention is that the ALJ's finding that Brown does not meet Listing 12.05(C) is tainted by error and not supported by the evidence. Several requirements must be present in order for a plaintiff to meet the Listing 12.05(C) for mental retardation. 20 C.F.R. Pt. 404, Subpart P, App. 1 §12.05. The initial paragraph includes a diagnostic description of mental retardation: "significant subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Pt. 404, Subpart P, App. 1 §12.05. Subsection C further requires that the plaintiff must establish "a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." (*Id*)

In reviewing the record, there is substantial evidence to support the ALJ's conclusion that Brown did not meet the criteria for Listing 12.05(C). While the ALJ did not explicitly state each element and whether or not he found them to be present, it is clear that ALJ considered each element in his determination.

The Commissioner argues that there has been no formal diagnosis of mental retardation, especially during the period before age 22; therefore, Brown does not meet listing 12.05(C). However, in *Maresh v. Barnhart,* the 8th Circuit ruled that no formal diagnosis of mental retardation is required to fulfill the requirement in the introductory paragraph. 438 F.3d 897, 899 (8th. Cir. 2006). Since *Maresh*, several other courts have held the same, including the district court in *Witt v. Barnhart.* 446 F.Supp.2d 886, 894 (N.D.Ill. 2006).

The claimant does, however, need to satisfy the diagnostic description of mental retardation, which is "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period." 20 C.F.R. Part 404, Subpt. P, App. 1, §12.05. It is with this part of 12.05 that the ALJ determined that Brown could

not meet the listing. In this respect, the Seventh Circuit uses the standard set forth in *Adkins v. Barnhart*. 226 F. App'x 600, 605 (7th. Cir. 2007). In that case, the Court stated that other factors, such as the claimant's life activities and employment history, must be considered and weighed and properly play into the ALJ's decision. *Id.* Following this standard, there is substantial evidence to support the ALJ's finding that Brown did not meet Listing 12.05(C). He graduated from high school, albeit in the special education program, attended some post high school vocational schools, held a job for several years, and engages in a variety of daily living activities. *See Witt*, 446 F.Supp.2d at 895, (where claimant alleged 12.05(C) but ALJ rejected claim because he had learning disability and not mental retardation, graduated high school in special education, worked for several years and engaged in daily activities.).

In February 2002, Brown was referred to Thomas P. Dhahens, PhD, for intelligence testing (R318). At the time of the test, Brown was working for the Moline Dispatch newspaper doing materials handling. (*Id.*) Dr. Dhahens' test results concluded that Brown has a verbal I.Q. of 66, a performance I.Q. of 100, and a full scale I.Q. of 79 (R319) Dr. Dhahens did attribute his low verbal I.Q. to a broad learning disorder and/or dyslexia (*Id.*). Brown performed well on "common sense" problems, but has extremely poor reading skills and his verbal/academic base is very limited (*Id.*). Dr. Dhahens notes that Brown is not mentally competent to manage his own disability benefits, he does not live fully independent, and his reading and arithmetic skills are too poor to manage a checkbook. (*Id.*) He did conclude that Brown is capable of (and is currently doing) performing unskilled manual labor. (*Id.*)

Brown also testified at the hearing that he performed daily activities (R497-504). He is able to drive and transports his mother to her doctor appointments (*Id.*). He takes care of the flowers, mows the lawn, cleans the laundry and dishes, and he even cooks. (*Id.*) He is able to do maintenance on his lawn mower, such as change the oil, sharpen the blades, and other odds and ends. (*Id.*) He changes the oil and does regular maintenance on his truck. (*Id.*) He changes the furnace filter and water filter. (*Id.*)

Brown also testified that he had a job for many years working at the Moline Dispatch, a newspaper in Moline, Illinois. (R490-92) He was a dockworker and would load and unload the trucks with the newspapers. (*Id.*) In order to perform the job, he used a power operated forklift. (*Id.*) Although the ALJ concluded that Brown could no longer perform this job, the ALJ concluded that there are several other jobs that he could perform, even with his impairments. (R523) Those jobs include laundry worker, electronics worker, light packaging work or dishwasher. (*Id.*) Brown's educational background, work history and daily activities provide substantial evidence to support the ALJ's conclusion that he does not meet the criteria for Listing 12.05(C).

Brown next argues that the hypothetical question presented to the VE does not accurately represent the limitations that Mr. Brown's disabilities place upon him. At step 4, the ALJ concluded that Brown could not perform his past work. 20 C.F.R. §404.1520. Therefore, in Step 5, the ALJ is to assess the residual functional capacity ("RFC") and age, education and work experience to see if he can make an adjustment to other work. (*Id.*) If an adjustment can be made, then the plaintiff is not disabled. (*Id.*) If he cannot make an adjustment, then he is disabled. (*Id.*) In evaluating Brown, the ALJ determined that there were other jobs that he could perform and, consequently, Brown is not disabled.

The ALJ presented the VE with information relating to Brown that he thought was relevant from the record. It is clear that the ALJ reviewed the record thoroughly before making his decision. He reviewed and discussed in depth several examining and reviewing experts with regard to Brown's abilities and disabilities. In particular, the ALJ discussed: Dr. Dhahens' consultative psychological exam (where Brown's I.Q was tested); Dr. Sales' psychiatric evaluation (which showed that Brown was taking Zoloft for his "low grade" depression); Dr. Mordhorst's neuropsychological exam (which showed his intellectual abilities at the borderline level); and Dr. Santiago's notes (as Brown's treating physician). The ALJ also thoroughly discussed Brown's daily activities and his work limitations. It is clear that the ALJ understood

Brown's impairments and abilities before making his decision. The record supports the ALJ's finding that Brown has minimal exertional limitations, but he needs to avoid concentrated exposure to hazards.

Dr. Mordhorst found that Brown had some fine motor speed and dexterity problems, but he made no indication that this would affect his work abilities. (R422) Brown argues that the ALJ's failure to assess this impairment is reversible error; however, no other expert found any physical limitation, and more than one expert concluded that Brown does not have any physical limitations. (R393; 510) The objective evidence in the record does not support the conclusion that he has any physical impairment and therefore, it was not necessary to include a physical impairment in the hypothetical question to the VE. *Hodges v. Barnhart,* 509 F.Supp.2d 726, 736 (N.D.Ill. 2007) ("When an ALJ poses a hypothetical question to a VE, the question must fully set forth the claimant's impairments to the extent that they are supported by the medical evidence in the record.").

By going through and adding additional limitations in the hypothetical questions, the ALJ was trying to determine where Mr. Brown stands in relation to his work ability. The VE determined that, even though he does have moderate limitations in his ability to maintain concentration, persistence and pace (R395-412), several jobs exist where Brown can work given his disabilities. (R512-14) Although Brown has poor verbal and writing skills, he scored within the normal range on his performance I.Q. (R319) He has the ability to grasp simple instructions and complete simple projects, which is demonstrated by his previous employment. (R358) Brown was being treated for depression, but it was characterized as "low grade." (R392-94) Also, the record indicates that he was diagnosed with diabetes; however, it was under control and did not affect his overall abilities as long as he maintained a proper diet. (R428-35)

The ALJ took all of these factors into account when presenting the hypothetical question to the VE. He took into account Brown's work history and his educational background along

with his concentration and pace problems by asking whether there were per shift basis jobs where there is flexibility in pace. The VE concluded that there are in fact jobs of this nature. The ALJ added the stipulation that the job would need to consist of simple repetitive tasks, thereby accommodating for his lower intellectual capabilities. Once again, the VE indicated that there are still jobs in the economy where Brown could work. Finally, the ALJ added the restriction that the job would require a light exertional level. Even with this restriction, the VE indicated that there are jobs that exist in the local and national economy. There is substantial evidence that the ALJ took into consideration Brown's physical and mental limitations, as supported by the record, in his hypothetical question to the VE. *Hodges,* 509 F.Supp.2d at 736. Therefore, remand is not warranted with regard to the hypothetical question presented to the VE.

Thirdly, Brown argues that the ALJ erred in giving the treating doctor's opinion no weight. When treating and consulting physicians present conflicting evidence, the ALJ may decide whom to believe, so long as substantial evidence supports that decision. *Dixon v. Massanari,* 270 F.3d 1171, 1178 (7th Cir. 2001). Although it is not possible to say that the ALJ gave Dr. Santiago's opinions no weight, there is substantial evidence to support the ALJ's determination to discount Dr. Santiago's opinion regarding the Brown's abilities. The ALJ gave several reasons why he did not give full weight to Dr. Santiago's opinion. Although his reasoning that the doctor's notes contain few references to mental challenges is unpersuasive, his other reasons are persuasive. Dr. Santiago was treating Brown for his depression and diabetes and not his mental impairments. (R429-435) Dr. Santiago is a general family doctor and not a specialist in mental health. Additionally, Dr. Santiago stated in his treatment notes that he would attempt to obtain assistance for Brown's medications. (R430) In a case where the treating physician may be sympathetic for his patient, the ALJ may give more weight to reviewing experts than treating physicians. *Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008).

Brown was also seen by Dr. Dhahens, Dr. Sales, and Dr. Mordhorst. These doctors all examined Brown, and the ALJ used their opinions and conclusions in his finding that Brown is not disabled. Dr. Dhahens concluded that although Brown has a developmental reading disorder, he is able to perform unskilled manual labor. (R319) Dr. Sales determined that he had major depression and a reading disorder, but did not comment or evaluate Brown with regard to his ability to work; only that he may have trouble obtaining a job due to his difficulty filling out applications. (R394) Dr. Mordhorst indicated that it would be appropriate for Brown to find jobs that capitalize on his visuospatial skills. (R421) He never concluded that Brown could not work. The ALJ also used Brown's work history to discredit the findings of the doctor. *Adkins,* 226 F. App'x at 605 ("The fact that Adkins was able to be gainfully employed until the age of forty-one without material complaints from his employers further exemplifies his adaptive abilities. . . . other factors, such as the claimant's life activities and employment history, must be considered and weighed and properly play into the ALJ's analysis."). There is evidence to support the ALJ's decision to disregard the opinion of Dr. Santiago because it is not supported by the overall record.

Finally, Brown contends that the ALJ erred in failing to contact Dr. Santiago for clarification of his opinion. An ALJ must recontact a medical source for clarification when the the information provided is inadequate to determine whether the claimant is disabled. *Sharbek v. Barnhart,* 390 F.3d 500, 504 (7th Cir. 2004). Here, there is substantial evidence that the ALJ had enough information available to him to make a determination. There are 8 medical opinions in the record (plus two from Brown's childhood). Even in dismissing any one opinion, there remains ample evidence to support the ALJ's conclusion that Brown is not disabled. It was unnecessary for the ALJ to contact Dr. Santiago to clarify any of his determinations.

## CONCLUSION

For the reasons set forth herein, Plaintiff's Motion for Summary Judgment [#12] is DENIED, and the Commissioner's Motion to Affirm [#17] is GRANTED. This matter is now TERMINATED.

ENTERED this 13th day of July, 2010.


                                                      <u>s/ Michael M. Mihm</u>
                                                     Michael M Mihm
                                                     United States District Judge